# EXHIBIT A

# CARROLL STATE COURT CIV. NO. STCV2022000389

# DOCKET



| STCV2022000389 | ESSLINGER V WHITE, ET AL | CARROLL STATE | CONTRACT |

# Case Docket

**Case Initiation Date**
07/29/2022

**Assigned Judge**
J044

Why subscribe to PeachCourt+? Well, for one thing... you could get an automagic email alert when anyone files anything into this case. You don't have to come back here day after day after day just to check the docket. We'll take care of that for you. All you have to do is subscribe!

## Party Information

Plaintiff:

**ESSLINGER, WILLIAM G., JR.**

Defendants:

**ENDLINK, LLC**

**WHITE, ROBERT F.**

## Attorney/Filer Information

**MYKKELTVEDT, TIANA**

| Docket # | Document Type | Description | Filer | Filing Date | Source |
|---|---|---|---|---|---|
| 1 | Complaint | | Mykkeltvedt, Tiana | 07/29/2022 | EFile: PeachCourt |
| 2 | Summons | Summons For ENDLINK, LLC. | Mykkeltvedt, Tiana | 07/29/2022 | EFile: PeachCourt |
| 3 | Summons | Summons For White, Robert F.. | Mykkeltvedt, Tiana | 07/29/2022 | EFile: PeachCourt |
| 4 | Civil Case Initiation Form | Case Information Form | Mykkeltvedt, Tiana | 07/29/2022 | EFile: PeachCourt |
| 5 | Receipt | | | 08/01/2022 | Manual |
| 6 | Complaint: Amended | Amended Complaint | Gober, Amy | 08/03/2022 | EFile: PeachCourt |
| 7 | Affidavit | Affidavit Of Service | Gober, Amy | 09/01/2022 | EFile: PeachCourt |
| 8 | Affidavit | Affidavit Of Service | Gober, Amy | 09/01/2022 | EFile: PeachCourt |

The clerk's office maintains the official record for this case. The information we provide is our best attempt at reflecting the official record. Despite our best efforts, you may find discrepancies between the information on this page and the clerk's official record. The clerk's official record is always official and is always THE record.

# CARROLL STATE COURT CIV. NO. STCV2022000389

# DOCKET ENTRY NO. 1

EFILED IN OFFICE
CLERK OF STATE COURT
CARROLL COUNTY, GEORGIA
**STCV2022000389**
J044
JUL 29, 2022 04:42 PM

Alan Lee, Clerk
Carroll County, Georgia

IN THE STATE COURT OF CARROLL COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| WILLIAM G. ESSLINGER, JR. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| ENDLINK, LLC; and | ) | |
| ROBERT F. WHITE | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## **COMPLAINT**

**COMES NOW** WILLIAM G. ESSLINGER, JR., Plaintiff, and files this Complaint

against Defendants ENDLINK, LLC, and ROBERT F. WHITE. and shows this Court as follows:

### **PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff WILLIAM G. ESSLINGER, JR., ("Esslinger") is a citizen and resident

of Carroll County, Georgia.

2.      Defendant ENDLINK, LLC, ("Endlink") is a Florida limited liability company

that maintains its principal office in Florida and may be properly served by delivering a

summons and a copy of this Complaint to its registered agent: Mrs. Eva Liz De Lemos, 2494

Verdmont Ct, Cape Coral, FL 33991.

3.      Defendant ROBERT F. WHITE ("White") is a citizen and resident of Lee

County, Florida and may be properly served at his personal address: 16033 Cutters Court, Fort

Myers, FL 33908.

4.       This Court has jurisdiction over Defendants ENDLINK and WHITE because

they have purposefully availed themselves of the benefits and protections of the state of Georgia

through voluntarily transacting extensive business and executing contracts with Plaintiff ESSLINGER in Carrollton, Georgia.

5.    Venue rests in Carroll County, Georgia pursuant to O.C.G.A. §§ 9-10-31 and 14-2-510, because Defendants pursued business in Carroll County, the contract at issue was negotiated, executed, and performed from Carroll County, and the wrongful acts that form the basis of Plaintiff's claims occurred within Carroll County.

## FACTUAL ALLEGATIONS

6.    Plaintiff ESSLINGER is a seasoned chief executive officer and attorney who focuses on corporate, technology, and digital health law.

7.    ESSLINGER has over twenty years of experience representing digital health companies and investors and facilitating corporations' success through his leadership.

8.    Defendant ENDLINK is a healthcare data company offering a platform that facilitates patients' access to their medical information.

9.    Defendant WHITE is the founder and current chief executive officer of ENKDLINK.

10.    Throughout the year of 2020, Defendants ENDLINK and WHITE solicited Plaintiff ESSLINGER's help, hoping that he would bring to their fledgling company his standout professional reputation and wide-ranging experience in healthcare information technology.

11.    The parties engaged in ongoing discussions regarding possible roles that Plaintiff ESSLINGER might play at ENDLINK.

12.    Defendant WHITE had worked with Plaintiff ESSLINGER previously through their mutual involvement with another Carrollton-based company, Greenway. From 2013 until

these negotiations regarding ENDLINK began in 2020, Defendant WHITE contacted Plaintiff ESSLINGER approximately once per year to seek his business advice on other projects.

13. At the culmination of the ENDLINK negotiations—which Plaintiff ESSLINGER conducted over phone and email exclusively from his home and office in Carrollton, Georgia— the Defendants invited Plaintiff to join ENDLINK as its CEO.

14. Plaintiff ESSLINGER agreed to serve as CEO starting January 1, 2021. Defendants ENDLINK and WHITE expected that all of Plaintiff ESSLINGER's work would be conducted from Carrollton, Georgia.

15. According to the agreement between Plaintiff and Defendants, ESSLINGER would work twenty hours per work while serving as ENDLINK's CEO, and he was to be compensated $12,600 per month.

16. This monetary compensation for Plaintiff ESSLINGER's work was not conditioned on meeting any benchmarks. It was in essence a salary for the time ESSLINGER spent working for ENDLINK. Plaintiff ESSLINGER agreed to defer receipt of this monetary compensation until ENDLINK accumulated sufficient funds to pay him (including backpay for months worked before payments began).

17. Additionally, Plaintiff ESSLINGER was promised 11% equity ownership in ENDLINK upon meeting four capital-raising benchmarks over a three-year period. Plaintiff ESSLINGER was to receive a 2.75% equity interest for each benchmark achieved (totaling 11% upon meeting all four benchmarks).

18. Plaintiff ESSLINGER made substantial contributions to ENDLINK, drawing on his extensive managerial experience and expertise to improve the company's operations, strategy, and finances.

19.     And as anticipated by all parties during their negotiations, Plaintiff ESSLINGER conducted all of his work for ENDLINK from his home and primary place of business in Carrollton, Georgia.  ESSLINGER never met Defendants WHITE and ENDLINK at their place of business in Florida.

20.     Plaintiff ESSLINGER's industry reputation and extensive industry contacts and venture capital contacts alone brought great benefit to ENDLINK.  Defendant WHITE had never been involved in a similar fundraising effort and heavily relied on Plaintiff ESSLINGER's experience in pitch decks for ENDLINK.

21.     In addition to his work to immediately improve company operations, Plaintiff ESSLINGER worked diligently to position Defendant ENDLINK for future growth—developing and revising 24+ versions of ENDLINK's investor pitch deck (despite ENDLINK's management continually changing its focus, product descriptions, sale strategies, market approaches, and financial planning projections between January 1, 2021 and September 23, 2021).

22.     Specifically, over the course of his work for Defendant ENDLINK, Plaintiff ESSLINGER provided to ENDLINK his contact list of 710 contacts categorized into 22 types, including 48 venture capitalists and 12 investment banks, that were imported into Defendant ENDLINK's CRM (Customer Relationship Management).

23.     Plaintiff ESSLINGER also contacted over 20 of his industry vendors and set up meetings with 10 EHR (Electronic Health Record) vendors and 5 HIT (Healthcare Information Technology) vendors to secure strategic partnerships for Defendant ENDLINK.

24.     In addition to providing these many contacts and vendor meetings, Plaintiff ESSLINGER also secured a meeting with Harris Computer Company to explore its potential acquisition of ENDLINK, developed and populated an extensive virtual data room for diligence

requests, responded to multiple diligence requests (even as ENDLINK's information and strategy continued to change unexpectedly), contacted over 40 venture capitalists, and gave investment pitches to approximately 20 of those venture capitalists.

25.     Plaintiff ESSLINGER performed these extensive services for the Defendants during his tenure with ENDLINK, and despite the delays and challenges Plaintiff ESSLINGER encountered in getting timely and accurate information from ENDLINK, on August 25, 2021 he secured the services of an investment banker, Allen Mooney & Barnes Brokerage Service, LLC ("AMB").

26.     Plaintiff ESSLINGER worked with AMB to further revise company strategy, financial projections, pitch decks, diligence, and the venture capital contact list, including a strategy for following up with those venture capitalists already contacted by Plaintiff ESSLINGER.

27.     Within two weeks of obtaining Defendant ENDLINK's financials, Plaintiff ESSLINGER had already negotiated and closed an engagement letter with AMB on extraordinarily favorable terms.

28.     Despite delays caused by Defendant ENDLINK's difficulties producing accurate financial information to Plaintiff ESSLINGER and Defendant ENDLINK's constantly changing business focus and strategy (which slowed the company's ability to raise capital) Plaintiff ESSLINGER established strong company fundamentals that have increased the value and marketability of Defendant ENDLINK.

29.     Plaintiff ESSLINGER reviewed and corrected financial information and wrote financial projections for ENDLINK that were approved by WHITE and the company at large.

30.     Plaintiff ESSLINGER secured an insurance quote (which, based on information and belief, has been bound in an insurance policy) that was absolutely necessary to Defendant ENDLINK's operations given that its business centers on storage of and access to patients protected health information (PHI). Previously, ENDLINK carried no insurance coverage, despite the significant risks of managing sensitive information.

31.     Plaintiff ESSLINGER ran weekly meetings with Defendant ENDLINK's management team to coordinate and enhance communication and to teach the management team how to grow Defendant ENDLINK's business.

32.     Plaintiff ESSLINGER revised corporate documents to help Defendant ENDLINK become a next-level company that could successfully raise necessary capital.

33.     Plaintiff ESSLINGER developed company strategy, market research, sales strategies that responded to Defendant ENDLINK's changing focuses, product descriptions, and pricing schema demanded by Defendants WHITE and ENDLINK.

34.     Plaintiff ESSLINGER's expertise, time, and efforts have conferred substantial benefits on Defendant ENDLINK, and Plaintiff ESSLINGER forewent other opportunities in his legal practice to accommodate the demands on his time from ENDLINK. Notably, for other legal work, Plaintiff Esslinger could have charged his regular hourly rate, as opposed to the discounted rate applied to ENDLINK.

35.     However, Defendant ENDLINK abruptly terminated Plaintiff ESSLINGER's position as CEO on September 23, 2021.  Defendants ENDLINK and WHITE have failed entirely to compensate Plaintiff ESSLINGER for his valuable contributions to ENDLINK, paying him **nothing** to date—despite Plaintiff's attempt to reason with Defendants following his sudden termination.

36. Defendants ENDLINK and WHITE claim that this lack of payment is due to the Plaintiff's failure to meet his fundraising benchmark, but Defendants ENDLINK and WHITE's actions—their constantly changing company directives and Plaintiff ESSLINGER's unjustified early termination—prevented ESSLINGER from meeting his goals.

37. Defendants ENDLINK and WHITE reaped the benefits of Plaintiff ESSLINGER's extensive labor and contributions without providing the promised compensation, including his monthly salary and equity in ENDLINK.

38. Indeed, Plaintiff ESSLINGER worked as described in detail for Defendants ENDLINK and WHITE for 8 months and 23 days, yet Plaintiff ESSLINGER has received none of his salary or the promised company equity.

39. For the work period of January 1, 2021 through September 23, 2021, Plaintiff ESSLINGER is owed $110,189.59 according to the pay rate in his independent contractor agreement with ENDLINK.

40. Plaintiff ESSLINGER is also owed 11% equity in ENDLINK, which would have been part of compensation according to his independent contractor agreement had Defendants ENDLINK and WHITE not prevented Plaintiff ESSLINGER from meeting the agreed-upon benchmarks.

41. If billed at his regular hourly rate, Plaintiff ESSLINGER would be owed approximately $299,071.43 for the work he already performed for Defendants ENDLINK and WHITE.

42. Defendant ENDLINK and its counsel on various occasions have refused to provide Plaintiff ESSLINGER any compensation for his extensive time and work over his nearly nine months at ENDLINK.

43.     After failed attempts to reason amicably, Defendants ENDLINK and WHITE have rendered litigation Plaintiff ESSLINGER's only remaining option to obtain compensation for his efforts.

44.     Therefore, Plaintiff ESSLINGER brings the following claims against Defendants ENDLINK and WHITE (in his capacity as an agent of ENDLINK and in his personal capacity) for the compensation Plaintiff is owed according to his independent contractor agreement and for the work he did for ENDLINK.

### COUNT ONE - BREACH OF CONTRACT
### (AGAINST DEFENDANTS ENDLINK AND WHITE)

45.     The preceding factual allegations (¶¶ 7–40) are incorporated by reference into this Count.

46.     Plaintiff ESSLINGER entered into an independent contractor agreement with Defendant ENDLINK and Defendant WHITE as the owner and founder of ENDLINK that began January 1, 2021.

47.     Pursuant to the Independent Contractor Agreement, Defendants agreed in relevant part: (a) to engage Plaintiff for three years at twenty hours per week; (b) to compensate Plaintiff according to the terms listed therein at an average of $12,600 per month and to provide 11% equity in ENDLINK upon meeting certain capital raising benchmarks.

48.     In exchange, Plaintiff agreed in part to provide his services and expertise as CEO of Defendant ENDLINK.

49.     Defendants ENDLINK and WHITE breached their agreement with Plaintiff ESSLINGER when they terminated him early on September 23, 2021.

50.     Because of Defendants ENDLINK and WHITE's breach, Plaintiff ESSLINGER was not able to complete his term as CEO and meet the conditions required to receive his equity in ENDLINK.

51.     Therefore, Defendants waived the condition precedent to Plaintiff ESSLINGER's compensation.

52.     Plaintiff ESSLINGER has complied with other provisions of the independent contractor agreement.

53.     Plaintiff ESSLINGER expected to receive $12,600 per month for three years under his independent contractor agreement, totaling $453,600.

54.     Plaintiff ESSLINGER has not received any of the payment or equity due under the independent contractor agreement.

55.     Plaintiff ESSLINGER has suffered and will continue to suffer damages as a proximate cause of Defendants' actions.

56.     WHEREFORE, Plaintiff ESSLINGER prays that this Court provide all available relief in law and equity, including:

> a)  Monetary damages reflecting the full expected value of Plaintiff ESSLINGER's 3-year contract with ENDLINK—approximately $453,600;
>
> b)  An 11% equity interest in ENDLINK or the monetary equivalent;
>
> c)  Accrued interest on this unpaid compensation;
>
> d)  Attorneys' fees and expenses;
>
> e)  All other relief that the Court deems just and proper.

## COUNT TWO – PROMISSORY ESTOPPEL
### (AGAINST DEFENDANTS ENDLINK AND WHITE)

57.     The preceding factual allegations (¶¶ 7–51) are incorporated by reference into this Count. Plaintiff ESSLINGER believes that Defendants ENDLINK and WHITE breached a valid contract supported by proper consideration, as outlined in Count One above. But to the extent Defendants deny such a contract exists, Plaintiff ESSLINGER demonstrates to the Court the following:

58.     Defendants ENDLINK and WHITE hired Plaintiff ESSLINGER as CEO of ENDLINK and expected him to commit substantial time and expertise to this position.

59.     For this work as CEO, Defendants ENDLINK and WHITE promised Plaintiff ESSLINGER a salary and equity interest in the company.

60.     Plaintiff ESSLINGER relied on that promise in working for Defendants ENDLINK and WHITE from January 1, 2021 through September 23, 2021—committing approximately 757.14 hours to the company and utilizing his many industry connections to gain valuable opportunities for ENDLINK.

61.     Plaintiff ESSLINGER suffered a detriment as a result of that reliance—receiving no compensation at all despite the significant work performed for Defendants ENDLINK and WHITE.

62.     Plaintiff ESSLINGER has suffered and will continue to suffer damages as a proximate cause of the Defendants' actions.

63.     WHEREFORE, Plaintiff ESSLINGER prays that this Court provide all available relief in law and equity, including:

    a)  Monetary damages reflecting the full expected value of Plaintiff ESSLINGER's 3-year contract with ENDLINK—approximately $453,600;

b)  An 11% equity interest in ENDLINK or the monetary equivalent;

c)  Pre- and post-judgment interest on this unpaid compensation;

d)  Attorney's fees and expenses;

e)  All other relief that the Court deems just and proper.

## COUNT THREE – QUANTUM MERUIT
### (AGAINST DEFENDANTS ENDLINK AND WHITE)

64.     The preceding factual allegations (¶¶ 7–58) are incorporated by reference into this Count.  Plaintiff ESSLINGER believes that Defendants ENDLINK and WHITE breached a valid contract supported by proper consideration, as outlined in Count One above. But to the extent Defendants deny such a contract exists, Plaintiff ESSLINGER demonstrates to the Court the following:

65.     Plaintiff ESSLINGER performed a valuable service for Defendants ENDLINK and WHITE.

66.     Plaintiff ESSLINGER's services were performed at Defendants ENDLINK and WHITE's request and were knowingly accepted by them.

67.     Given Plaintiff ESSLINGER's extensive work for Defendants ENDLINK and WHITE, the value he contributed to ENDLINK, and the significant worth of his services as an experienced and specialized professional, Defendants' failure to compensate Plaintiff ESSLINGER was unjust.

68.     But for the expectation of compensation from Defendants ENDLINK and WHITE, Plaintiff ESSLINGER would not have served as CEO of ENDLINK.

69.      Plaintiff ESSLINGER's rate for his consulting services during the relevant time period was $395 per hour. Plaintiff spent approximately 757.14 hours working for ENDLINK.

70.     Plaintiff ESSLINGER has suffered and will continue to suffer damages as a proximate cause of the Defendants' actions.

71.     WHEREFORE, Plaintiff ESSLINGER prays that this Court provide all available relief in law and equity, including:

a) Compensatory damages in the amount of $299,071.43;

b) Pre- and post-judgment interest on this unpaid compensation;

c) Attorney's fees and expenses;

d) All other relief that the Court deems just and proper.

## COUNT FOUR – UNJUST ENRICHMENT
### (AGAINST DEFENDANT ENDLINK AND WHITE)

72.     The preceding factual allegations (¶¶ 7–65) are incorporated by reference into this Count.

73.     Defendants ENDLINK and WHITE unfairly took advantage of Plaintiff ESSLINGER in order to enrich themselves at Plaintiff ESSLINGER'S expense.

74.     Plaintiff ESSLINGER provided a benefit to Defendants ENDLINK and WHITE through his services as CEO of ENDLINK.

75.     Plaintiff ESSLINGER received no compensation for the benefit he provided.

76.     Defendants ENDLINK and WHITE's failure to compensate Plaintiff ESSLINGER renders the transaction unjust.

77.     Plaintiff ESSLINGER's rate for his consulting services during the relevant time period was $395 per hour. Plaintiff spent approximately 757.14 hours working for ENDLINK.

78.     Plaintiff ESSLINGER has suffered and will continue to suffer damages as a proximate cause of the Defendants' actions.

79. WHEREFORE, Plaintiff ESSLINGER prays that this Court provide all available relief in law and equity, including:

a) Compensatory damages in the amount of $299,071.43;

b) Attorney's fees and expenses;

c) Accrued interest on this unpaid compensation;

d) All other relief that the Court deems just and proper.

## COUNT FIVE – ATTORNEYS' FEES AND EXPENSES OF LITIGATION PURSUANT TO O.C.G.A. § 13-6-11 (AGAINST DEFENDANTS ENDLINK AND WHITE)

80. The preceding factual allegations (¶¶ 7–72) are incorporated by reference into this Count.

81. Defendants ENDLINK and WHITE have acted in bad faith in terminating Plaintiff ESSLINGER's employment under the Employment Agreement. Defendants have not complied with the terms of their agreement with ESSLINGER that they personally negotiated.

82. Defendants ENDLINK and WHITE have in bad faith refused to pay Plaintiff ESSLINGER any compensation for his extensive work for ENDLINK.

83. Plaintiff ESSLINGER worked for Defendants WHITE and ENDLINK for nearly 9 months and received *no compensation*.

84. Defendants claim that ESSLINGER did not meet the required benchmarks to receive his 11% equity in ENDLINK, but ESSLINGER could not meet his benchmarks because of Defendants' early termination. In essence, ENDLINK's unjustified early termination could be interpreted as a tactic to avoid compensation altogether for work that ESSLINGER has already performed.

85.     Defendants ENDLINK and WHITE have been stubbornly litigious and caused unnecessary trouble and expense in refusing to compensate Plaintiff ESSLINGER for his work.

86.     Despite their long history of courting Plaintiff ESSLINGER for his business acumen, now Defendants have left Plaintiff with no option other than litigation to receive fair compensation for his significant time and efforts.

87.     Despite any disagreements regarding the proper amount of compensation, there is no reasonable question that ESSLINGER is owed more than the *nothing* he has been paid for the work he performed for ENDLINK.

88.     Because of Defendants' bad faith and stubborn litigiousness, Plaintiff ESSLINGER is entitled to an award of attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff prays for the following relief:

(a) That summons and process be issued requiring these Defendants to appear as provided by law to answer the allegations of this Complaint;

(b) That Plaintiff have a TRIAL BY JURY of all issues so triable;

(c) That Plaintiff be awarded an appropriate sum under Georgia law to compensate for his damages as proven at trial and determined by the enlightened conscience of a jury;

(d) That Plaintiff recover attorney's fees and all costs of litigation; and

(e) That Plaintiff have all such other and further relief as this Court deems just and appropriate.

Respectfully submitted, this 29th day of July, 2022.

BONDURANT MIXSON & ELMORE LLP

BY: */s/ Tiana S. Mykkeltvedt*
TIANA S. MYKKELTVEDT
Georgia Bar No. 533512
Laurie Ann Taylor
Georgia Bar No. 452926

1201 West Peachtree St NW
Suite 3900
Atlanta, GA 30309
Telephone:  404-881-4144
Facsimile:  404-881-4111

*Attorneys for Plaintiff*

# CARROLL STATE COURT CIV. NO. STCV2022000389

# DOCKET ENTRY NO. 2

# STATE COURT OF CARROLL COUNTY
## STATE OF GEORGIA

CIVIL ACTION NUMBER  <u>STCV2022000389</u>

Esslinger, William G., Jr.

---

**PLAINTIFF**

**VS.**

ENDLINK, LLC
White, Robert F.

---

**DEFENDANTS**

**SUMMONS**

TO: ENDLINK, LLC

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **Tiana Mykkeltvedt**
> **Bondurant Mixson & Elmore LLP**
> **3900 One Atlantic Center**
> **1201 W Peachtree St**
> **Atlanta, Georgia 30309**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 29th day of July, 2022.**

Clerk of State Court

Alan Lee, Clerk
Carroll County, Georgia

# CARROLL STATE COURT CIV. NO. STCV2022000389

# DOCKET ENTRY NO. 3

# STATE COURT OF CARROLL COUNTY
# STATE OF GEORGIA

CIVIL ACTION NUMBER  <u>STCV2022000389</u>

Esslinger, William G., Jr.

_____

**PLAINTIFF**

**VS.**

ENDLINK, LLC
White, Robert F.

_____

**DEFENDANTS**

**SUMMONS**

TO: WHITE, ROBERT F.

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **Tiana Mykkeltvedt**
> **Bondurant Mixson & Elmore LLP**
> **3900 One Atlantic Center**
> **1201 W Peachtree St**
> **Atlanta, Georgia 30309**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 29th day of July, 2022.**

Clerk of State Court

Alan Lee, Clerk
Carroll County, Georgia

# CARROLL STATE COURT CIV. NO. STCV2022000389

# DOCKET ENTRY NO. 4

**General Civil and Domestic Relations Case Filing Information Form**

⛪ **EFILED IN OFFICE**
CLERK OF STATE COURT
CARROLL COUNTY, GEORGIA

**STCV2022000389**

JUL 29, 2022 04:42 PM

*Alan J. Lee*
Alan Lee, Clerk
Carroll County, Georgia

☐ **Superior or** ☑ **State Court of** Carroll          **County**

| **For Clerk Use Only** | |
|---|---|
| **Date Filed** 07-29-2022 | **Case Number** STCV2022000389 |
| **MM-DD-YYYY** | |

**Plaintiff(s)**

Esslinger, William G., Jr.

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Defendant(s)**

ENDLINK, LLC

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

White, Robert F.

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Plaintiff's Attorney** Mykkeltvedt, Tiana          **Bar Number** 533512          **Self-Represented** ☐

**Check one case type and, if applicable, one sub-type in one box.**

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☑ Contract
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____          _____
**Case Number**          **Case Number**

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____
**Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____

Version 1.1.20

# CARROLL STATE COURT CIV. NO. STCV2022000389

# DOCKET ENTRY NO. 5

RECEIPT NUMBER: 102069          8/1/2022
                                7:55

NAME: BONDURANT MIXSON & ELMORE, LLP

TRANSACTION TYPE        R/C      AMOUNT
    CARROLL COUNTY STATE COURT (2)

                        R       $213.00
CIVIL
    ST-2022-CV-389-DF-1


        TOTAL DUE:              $213.00

| CHECK # | AMOUNT |
|---|---|
| -1 | $213.00 |

        TOTAL PAYMENT:          $213.00
                BALANCE:        $0.00

OP: KAREN

SCANNED

# Carroll State Court Civ. No. STCV2022000389

# Docket Entry No. 6

EFILED IN OFFICE
CLERK OF STATE COURT
CARROLL COUNTY, GEORGIA
**STCV2022000389**
J044
AUG 03, 2022 04:32 PM

Alan J. Lee
Alan Lee, Clerk
Carroll County, Georgia

IN THE STATE COURT OF CARROLL COUNTY
STATE OF GEORGIA

WILLIAM G. ESSLINGER, JR. )
)
    Plaintiff )
)
v. )     Civil Action No. STCV2022000389
)
ENDLINK, LLC; and )
ROBERT F. WHITE )
)     JURY TRIAL DEMANDED
    Defendants. )

## <u>AMENDED COMPLAINT</u>

**COMES NOW** WILLIAM G. ESSLINGER, JR., Plaintiff, and files this Amended

Complaint against Defendants ENDLINK, LLC, and ROBERT F. WHITE. and shows this Court

as follows:

### PARTIES, JURISDICTION AND VENUE

1.    Plaintiff WILLIAM G. ESSLINGER, JR., ("Esslinger") is a citizen and resident

of Carroll County, Georgia.

2.    Defendant ENDLINK, LLC, ("Endlink") is a Florida limited liability company

that maintains its principal office in Florida and may be properly served by delivering a

summons and a copy of this Complaint to its registered agent: Mrs. Eva Liz De Lemos, 2494

Verdmont Ct, Cape Coral, FL 33991.

3.    Defendant ROBERT F. WHITE ("White") is a citizen and resident of Lee

County, Florida and may be properly served at his personal address: 16033 Cutters Court, Fort

Myers, FL 33908.

4.    This Court has jurisdiction over Defendants ENDLINK and WHITE because

they have purposefully availed themselves of the benefits and protections of the state of Georgia

- 1 -

through voluntarily transacting extensive business and executing contracts with Plaintiff ESSLINGER in Carrollton, Georgia.

5.    Venue rests in Carroll County, Georgia pursuant to O.C.G.A. §§ 9-10-31 and 14-2-510, because Defendants pursued business in Carroll County, the contract at issue was negotiated, executed, and performed from Carroll County, and the wrongful acts that form the basis of Plaintiff's claims occurred within Carroll County.

## FACTUAL ALLEGATIONS

6.    Plaintiff ESSLINGER is a seasoned chief executive officer and attorney who focuses on corporate, technology, and digital health law.

7.    ESSLINGER has over twenty years of experience representing digital health companies and investors and facilitating corporations' success through his leadership.

8.    Defendant ENDLINK is a healthcare data company offering a platform that facilitates patients' access to their medical information.

9.    Defendant WHITE is the founder and current chief executive officer of ENKDLINK.

10.    Throughout the year of 2020, Defendants ENDLINK and WHITE solicited Plaintiff ESSLINGER's help, hoping that he would bring to their fledgling company his standout professional reputation and wide-ranging experience in healthcare information technology.

11.    The parties engaged in ongoing discussions regarding possible roles that Plaintiff ESSLINGER might play at ENDLINK.

12.    Defendant WHITE had worked with Plaintiff ESSLINGER previously through their mutual involvement with another Carrollton-based company, Greenway. From 2013 until

these negotiations regarding ENDLINK began in 2020, Defendant WHITE contacted Plaintiff ESSLINGER approximately once per year to seek his business advice on other projects.

13.     At the culmination of the ENDLINK negotiations—which Plaintiff ESSLINGER conducted over phone and email exclusively from his home and office in Carrollton, Georgia— the Defendants invited Plaintiff to join ENDLINK as its CEO.

14.     Plaintiff ESSLINGER agreed to serve as CEO starting January 1, 2021. Defendants ENDLINK and WHITE expected that all of Plaintiff ESSLINGER's work would be conducted from Carrollton, Georgia.

15.     According to the agreement between Plaintiff and Defendants, ESSLINGER would work twenty hours per work while serving as ENDLINK's CEO, and he was to be compensated $12,600 per month.

16.     This monetary compensation for Plaintiff ESSLINGER's work was not conditioned on meeting any benchmarks. It was in essence a salary for the time ESSLINGER spent working for ENDLINK. Plaintiff ESSLINGER agreed to defer receipt of this monetary compensation until ENDLINK accumulated sufficient funds to pay him (including backpay for months worked before payments began).

17.     Additionally, Plaintiff ESSLINGER was promised 11% equity ownership in ENDLINK upon meeting four capital-raising benchmarks over a three-year period. Plaintiff ESSLINGER was to receive a 2.75% equity interest for each benchmark achieved (totaling 11% upon meeting all four benchmarks).

18.     Plaintiff ESSLINGER made substantial contributions to ENDLINK, drawing on his extensive managerial experience and expertise to improve the company's operations, strategy, and finances.

19.     And as anticipated by all parties during their negotiations, Plaintiff ESSLINGER conducted all of his work for ENDLINK from his home and primary place of business in Carrollton, Georgia.  ESSLINGER never met Defendants WHITE and ENDLINK at their place of business in Florida.

20.     Plaintiff ESSLINGER's industry reputation and extensive industry contacts and venture capital contacts alone brought great benefit to ENDLINK.  Defendant WHITE had never been involved in a similar fundraising effort and heavily relied on Plaintiff ESSLINGER's experience in pitch decks for ENDLINK.

21.     In addition to his work to immediately improve company operations, Plaintiff ESSLINGER worked diligently to position Defendant ENDLINK for future growth—developing and revising 24+ versions of ENDLINK's investor pitch deck (despite ENDLINK's management continually changing its focus, product descriptions, sale strategies, market approaches, and financial planning projections between January 1, 2021 and September 23, 2021).

22.     Specifically, over the course of his work for Defendant ENDLINK, Plaintiff ESSLINGER provided to ENDLINK his contact list of 710 contacts categorized into 22 types, including 48 venture capitalists and 12 investment banks, that were imported into Defendant ENDLINK's CRM (Customer Relationship Management).

23.     Plaintiff ESSLINGER also contacted over 20 of his industry vendors and set up meetings with 10 EHR (Electronic Health Record) vendors and 5 HIT (Healthcare Information Technology) vendors to secure strategic partnerships for Defendant ENDLINK.

24.     In addition to providing these many contacts and vendor meetings, Plaintiff ESSLINGER also secured a meeting with Harris Computer Company to explore its potential acquisition of ENDLINK, developed and populated an extensive virtual data room for diligence

requests, responded to multiple diligence requests (even as ENDLINK's information and strategy continued to change unexpectedly), contacted over 40 venture capitalists, and gave investment pitches to approximately 20 of those venture capitalists.

25.     Plaintiff ESSLINGER performed these extensive services for the Defendants during his tenure with ENDLINK, and despite the delays and challenges Plaintiff ESSLINGER encountered in getting timely and accurate information from ENDLINK, on August 25, 2021 he secured the services of an investment banker, Allen Mooney & Barnes Brokerage Service, LLC ("AMB").

26.     Plaintiff ESSLINGER worked with AMB to further revise company strategy, financial projections, pitch decks, diligence, and the venture capital contact list, including a strategy for following up with those venture capitalists already contacted by Plaintiff ESSLINGER.

27.     Within two weeks of obtaining Defendant ENDLINK's financials, Plaintiff ESSLINGER had already negotiated and closed an engagement letter with AMB on extraordinarily favorable terms.

28.     Despite delays caused by Defendant ENDLINK's difficulties producing accurate financial information to Plaintiff ESSLINGER and Defendant ENDLINK's constantly changing business focus and strategy (which slowed the company's ability to raise capital) Plaintiff ESSLINGER established strong company fundamentals that have increased the value and marketability of Defendant ENDLINK.

29.     Plaintiff ESSLINGER reviewed and corrected financial information and wrote financial projections for ENDLINK that were approved by WHITE and the company at large.

30.     Plaintiff ESSLINGER secured an insurance quote (which, based on information and belief, has been bound in an insurance policy) that was absolutely necessary to Defendant ENDLINK's operations given that its business centers on storage of and access to patients protected health information (PHI). Previously, ENDLINK carried no insurance coverage, despite the significant risks of managing sensitive information.

31.     Plaintiff ESSLINGER ran weekly meetings with Defendant ENDLINK's management team to coordinate and enhance communication and to teach the management team how to grow Defendant ENDLINK's business.

32.     Plaintiff ESSLINGER revised corporate documents to help Defendant ENDLINK become a next-level company that could successfully raise necessary capital.

33.     Plaintiff ESSLINGER developed company strategy, market research, sales strategies that responded to Defendant ENDLINK's changing focuses, product descriptions, and pricing schema demanded by Defendants WHITE and ENDLINK.

34.     Plaintiff ESSLINGER's expertise, time, and efforts have conferred substantial benefits on Defendant ENDLINK, and Plaintiff ESSLINGER forewent other opportunities in his legal practice to accommodate the demands on his time from ENDLINK. Notably, for other legal work, Plaintiff Esslinger could have charged his regular hourly rate, as opposed to the discounted rate applied to ENDLINK.

35.     However, Defendant ENDLINK abruptly terminated Plaintiff ESSLINGER's position as CEO on September 23, 2021.  Defendants ENDLINK and WHITE have failed entirely to compensate Plaintiff ESSLINGER for his valuable contributions to ENDLINK, paying him **nothing** to date—despite Plaintiff's attempt to reason with Defendants following his sudden termination.

36.     Defendants ENDLINK and WHITE claim that this lack of payment is due to the Plaintiff's failure to meet his fundraising benchmark, but Defendants ENDLINK and WHITE's actions—their constantly changing company directives and Plaintiff ESSLINGER's unjustified early termination—prevented ESSLINGER from meeting his goals.

37.     Defendants ENDLINK and WHITE reaped the benefits of Plaintiff ESSLINGER's extensive labor and contributions without providing the promised compensation, including his monthly salary and equity in ENDLINK.

38.     Indeed, Plaintiff ESSLINGER worked as described in detail for Defendants ENDLINK and WHITE for 8 months and 23 days, yet Plaintiff ESSLINGER has received none of his salary or the promised company equity.

39.     For the work period of January 1, 2021 through September 23, 2021, Plaintiff ESSLINGER is owed $110,189.59 according to the pay rate in his independent contractor agreement with ENDLINK.

40.     Plaintiff ESSLINGER is also owed 11% equity in ENDLINK, which would have been part of compensation according to his independent contractor agreement had Defendants ENDLINK and WHITE not prevented Plaintiff ESSLINGER from meeting the agreed-upon benchmarks.

41.     If billed at his regular hourly rate, Plaintiff ESSLINGER would be owed approximately $299,071.43 for the work he already performed for Defendants ENDLINK and WHITE.

42.     Defendant ENDLINK and its counsel on various occasions have refused to provide Plaintiff ESSLINGER any compensation for his extensive time and work over his nearly nine months at ENDLINK.

43.     After failed attempts to reason amicably, Defendants ENDLINK and WHITE have rendered litigation Plaintiff ESSLINGER's only remaining option to obtain compensation for his efforts.

44.     Therefore, Plaintiff ESSLINGER brings the following claims against Defendants ENDLINK and WHITE (in his capacity as an agent of ENDLINK and in his personal capacity) for the compensation Plaintiff is owed according to his independent contractor agreement and for the work he did for ENDLINK.

**COUNT ONE - BREACH OF CONTRACT**
**(AGAINST DEFENDANTS ENDLINK AND WHITE)**

45.     The preceding factual allegations (¶¶ 6–44) are incorporated by reference into this Count.

46.     Plaintiff ESSLINGER entered into an independent contractor agreement with Defendant ENDLINK and Defendant WHITE as the owner and founder of ENDLINK that began January 1, 2021.

47.     Pursuant to the Independent Contractor Agreement, Defendants agreed in relevant part: (a) to engage Plaintiff for three years at twenty hours per week; (b) to compensate Plaintiff according to the terms listed therein at an average of $12,600 per month and to provide 11% equity in ENDLINK upon meeting certain capital raising benchmarks.

48.     In exchange, Plaintiff agreed in part to provide his services and expertise as CEO of Defendant ENDLINK.

49.     Defendants ENDLINK and WHITE breached their agreement with Plaintiff ESSLINGER when they terminated him early on September 23, 2021.

50.     Because of Defendants ENDLINK and WHITE's breach, Plaintiff ESSLINGER was not able to complete his term as CEO and meet the conditions required to receive his equity in ENDLINK.

51.     Therefore, Defendants waived the condition precedent to Plaintiff ESSLINGER's compensation.

52.     Plaintiff ESSLINGER has complied with other provisions of the independent contractor agreement.

53.     Plaintiff ESSLINGER expected to receive $12,600 per month for three years under his independent contractor agreement, totaling $453,600.

54.     Plaintiff ESSLINGER has not received any of the payment or equity due under the independent contractor agreement.

55.     Plaintiff ESSLINGER has suffered and will continue to suffer damages as a proximate cause of Defendants' actions.

56.     WHEREFORE, Plaintiff ESSLINGER prays that this Court provide all available relief in law and equity, including:

    a)  Monetary damages reflecting the full expected value of Plaintiff ESSLINGER's 3-year contract with ENDLINK—approximately $453,600;

    b)  An 11% equity interest in ENDLINK or the monetary equivalent;

    c)  Accrued interest on this unpaid compensation;

    d)  Attorneys' fees and expenses;

    e)  All other relief that the Court deems just and proper.

## COUNT TWO – PROMISSORY ESTOPPEL
### (AGAINST DEFENDANTS ENDLINK AND WHITE)

57.     The preceding factual allegations (¶¶ 6–56) are incorporated by reference into this Count. Plaintiff ESSLINGER believes that Defendants ENDLINK and WHITE breached a valid contract supported by proper consideration, as outlined in Count One above. But to the extent Defendants deny such a contract exists, Plaintiff ESSLINGER demonstrates to the Court the following:

58.     Defendants ENDLINK and WHITE hired Plaintiff ESSLINGER as CEO of ENDLINK and expected him to commit substantial time and expertise to this position.

59.     For this work as CEO, Defendants ENDLINK and WHITE promised Plaintiff ESSLINGER a salary and equity interest in the company.

60.     Plaintiff ESSLINGER relied on that promise in working for Defendants ENDLINK and WHITE from January 1, 2021 through September 23, 2021—committing approximately 757.14 hours to the company and utilizing his many industry connections to gain valuable opportunities for ENDLINK.

61.     Plaintiff ESSLINGER suffered a detriment as a result of that reliance—receiving no compensation at all despite the significant work performed for Defendants ENDLINK and WHITE.

62.     Plaintiff ESSLINGER has suffered and will continue to suffer damages as a proximate cause of the Defendants' actions.

63.     WHEREFORE, Plaintiff ESSLINGER prays that this Court provide all available relief in law and equity, including:

      a)  Monetary damages reflecting the full expected value of Plaintiff ESSLINGER's 3-year contract with ENDLINK—approximately $453,600;

b) An 11% equity interest in ENDLINK or the monetary equivalent;

c) Pre- and post-judgment interest on this unpaid compensation;

d) Attorney's fees and expenses;

e) All other relief that the Court deems just and proper.

## COUNT THREE – QUANTUM MERUIT
### (AGAINST DEFENDANTS ENDLINK AND WHITE)

64.    The preceding factual allegations (¶¶ 6–63) are incorporated by reference into this Count.  Plaintiff ESSLINGER believes that Defendants ENDLINK and WHITE breached a valid contract supported by proper consideration, as outlined in Count One above. But to the extent Defendants deny such a contract exists, Plaintiff ESSLINGER demonstrates to the Court the following:

65.    Plaintiff ESSLINGER performed a valuable service for Defendants ENDLINK and WHITE.

66.    Plaintiff ESSLINGER's services were performed at Defendants ENDLINK and WHITE's request and were knowingly accepted by them.

67.    Given Plaintiff ESSLINGER's extensive work for Defendants ENDLINK and WHITE, the value he contributed to ENDLINK, and the significant worth of his services as an experienced and specialized professional, Defendants' failure to compensate Plaintiff ESSLINGER was unjust.

68.    But for the expectation of compensation from Defendants ENDLINK and WHITE, Plaintiff ESSLINGER would not have served as CEO of ENDLINK.

69.     Plaintiff ESSLINGER's rate for his consulting services during the relevant time period was $395 per hour. Plaintiff spent approximately 757.14 hours working for ENDLINK.

70.     Plaintiff ESSLINGER has suffered and will continue to suffer damages as a proximate cause of the Defendants' actions.

71.     WHEREFORE, Plaintiff ESSLINGER prays that this Court provide all available relief in law and equity, including:

    a)  Compensatory damages in the amount of $299,071.43;

    b)  Pre- and post-judgment interest on this unpaid compensation;

    c)  Attorney's fees and expenses;

    d)  All other relief that the Court deems just and proper.

## COUNT FOUR – UNJUST ENRICHMENT
### (AGAINST DEFENDANT ENDLINK AND WHITE)

72.     The preceding factual allegations (¶¶ 6–71) are incorporated by reference into this Count.

73.     Defendants ENDLINK and WHITE unfairly took advantage of Plaintiff ESSLINGER in order to enrich themselves at Plaintiff ESSLINGER'S expense.

74.     Plaintiff ESSLINGER provided a benefit to Defendants ENDLINK and WHITE through his services as CEO of ENDLINK.

75.     Plaintiff ESSLINGER received no compensation for the benefit he provided.

76.     Defendants ENDLINK and WHITE's failure to compensate Plaintiff ESSLINGER renders the transaction unjust.

77.     Plaintiff ESSLINGER's rate for his consulting services during the relevant time period was $395 per hour. Plaintiff spent approximately 757.14 hours working for ENDLINK.

78.     Plaintiff ESSLINGER has suffered and will continue to suffer damages as a proximate cause of the Defendants' actions.

79.     WHEREFORE, Plaintiff ESSLINGER prays that this Court provide all available relief in law and equity, including:

a)  Compensatory damages in the amount of $299,071.43;

b)  Attorney's fees and expenses;

c)  Accrued interest on this unpaid compensation;

d)  All other relief that the Court deems just and proper.

## COUNT FIVE – ATTORNEYS' FEES AND EXPENSES OF LITIGATION PURSUANT TO O.C.G.A. § 13-6-11 (AGAINST DEFENDANTS ENDLINK AND WHITE)

80.     The preceding factual allegations (¶¶ 6–79) are incorporated by reference into this Count.

81.     Defendants ENDLINK and WHITE have acted in bad faith in terminating Plaintiff ESSLINGER's employment under the Employment Agreement. Defendants have not complied with the terms of their agreement with ESSLINGER that they personally negotiated.

82.     Defendants ENDLINK and WHITE have in bad faith refused to pay Plaintiff ESSLINGER any compensation for his extensive work for ENDLINK.

83.     Plaintiff ESSLINGER worked for Defendants WHITE and ENDLINK for nearly 9 months and received *no compensation*.

84.     Defendants claim that ESSLINGER did not meet the required benchmarks to receive his 11% equity in ENDLINK, but ESSLINGER could not meet his benchmarks because of Defendants' early termination. In essence, ENDLINK's unjustified early termination could be interpreted as a tactic to avoid compensation altogether for work that ESSLINGER has already performed.

85.    Defendants ENDLINK and WHITE have been stubbornly litigious and caused unnecessary trouble and expense in refusing to compensate Plaintiff ESSLINGER for his work.

86.    Despite their long history of courting Plaintiff ESSLINGER for his business acumen, now Defendants have left Plaintiff with no option other than litigation to receive fair compensation for his significant time and efforts.

87.    Despite any disagreements regarding the proper amount of compensation, there is no reasonable question that ESSLINGER is owed more than the *nothing* he has been paid for the work he performed for ENDLINK.

88.    Because of Defendants' bad faith and stubborn litigiousness, Plaintiff ESSLINGER is entitled to an award of attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff prays for the following relief:

(a) That summons and process be issued requiring these Defendants to appear as provided by law to answer the allegations of this Complaint;

(b) That Plaintiff have a TRIAL BY JURY of all issues so triable;

(c) That Plaintiff be awarded an appropriate sum under Georgia law to compensate for his damages as proven at trial and determined by the enlightened conscience of a jury;

(d) That Plaintiff recover attorney's fees and all costs of litigation; and

(e) That Plaintiff have all such other and further relief as this Court deems just and appropriate.

Respectfully submitted, this 3rd day of August, 2022.

BONDURANT MIXSON & ELMORE LLP

BY:  */s/ Tiana S. Mykkeltvedt*
TIANA S. MYKKELTVEDT
Georgia Bar No. 533512
Laurie Ann Taylor
Georgia Bar No. 452926

1201 West Peachtree St NW
Suite 3900
Atlanta, GA 30309
Telephone:  404-881-4144
Facsimile:  404-881-4111

*Attorneys for Plaintiff*

# CARROLL STATE COURT CIV. NO. STCV2022000389

# DOCKET ENTRY NO. 7

# VERIFIED RETURN OF SERVICE

**EFILED IN OFFICE**
CLERK OF STATE COURT
CARROLL COUNTY, GEORGIA
**STCV2022000389**
Job # FM30173
**J044**
**SEP 01, 2022 04:28 PM**

Alan J. Lee
Alan Lee, Clerk
Carroll County, Georgia

**Client Info:**

Ancillary Legal Corporation
74 Goldrush Circle NE
Atlanta, GA  30328

**Case Info:**

| | |
|---|---|
| **PLAINTIFF:** | STATE COURT |
| WILLIAM G. ESSLINGER, JR. | |
| -versus- | County of Carroll, Georgia |
| **DEFENDANT:** | Court Case # **STCV2022000389** |
| ENDLINK, LLC | |

**Service Info:**

**Received by Mark Zammett: on August, 5th 2022 at 10:04 AM**
**Service:** I Served **Robert F. White**
With: **SUMMONS, AMENDED COMPLAINT**
by leaving with **Stephanie White, WIFE/CO-RESIDENT**

**At Residence 16033 CUTTERS COURT FORT MYERS, FL 33908**
On **8/8/2022** at **07:00 PM**
**Manner of Service: SUBSTITUTE SERVICE:**
FS 48.031(1)a SERVICE UPON ANY CO-RESIDENT RESIDING THEREIN 15 YEARS OF AGE OR ABOVE, AND THE PROCESS BEING
EXPLAINED TO THE PERSON WHO ACCEPTED SAID PROCESS.

**Served Description:  (Approx)**

Age: **49**, Sex: **Female**, Race: **White-Caucasian**, Height: **5' 5"**, Weight: **133**, Hair: **Blond** Glasses:  **No**

**Military Status:**

**Military Status = No**

I **Mark Zammett** acknowledge that I am 18 years or older, authorized to serve process, in good standing in the jurisdiction wherein
the process was served, and I have no interest in the above action. Under penalties of perjury, I declare that I have read the
foregoing document and that the facts stated in it are true.

**Mark Zammett**
Lic # **157433**

**Ancillary Legal Corporation**
74 Goldrush Circle NE
Atlanta, GA 30328

Client # 2022007213
Job # FM30173




INITIALS: MZ  ID # 157433
DATE: 8/8/2022 TIME: 07:00 PM
MILITARY: No

# STATE COURT OF CARROLL COUNTY
## STATE OF GEORGIA

CIVIL ACTION NUMBER  <u>STCV2022000389</u>

Esslinger, William G., Jr.

_____

**PLAINTIFF**

**VS.**

ENDLINK, LLC
White, Robert F.

_____

**DEFENDANTS**

**SUMMONS**

TO: WHITE, ROBERT F.

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Tiana Mykkeltvedt**
**Bondurant Mixson & Elmore LLP**
**3900 One Atlantic Center**
**1201 W Peachtree St**
**Atlanta, Georgia 30309**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 29th day of July, 2022.**

Clerk of State Court

_____
Alan Lee, Clerk
Carroll County, Georgia

# CARROLL STATE COURT CIV. NO. STCV2022000389

# DOCKET ENTRY NO. 8

# VERIFIED RETURN OF SERVICE

**EFILED IN OFFICE**
CLERK OF STATE COURT
CARROLL COUNTY, GEORGIA
**STCV2022000389**
Job # FM30367
**J044**
**SEP 01, 2022 04:43 PM**

*Alan J. Lee*
Alan Lee, Clerk
Carroll County, Georgia

**Client Info:**

Ancillary Legal Corporation
2900 Chamblee Tucker Road, Building 13
Atlanta, GA 30341

**Case Info:**

| | |
|---|---|
| **PLAINTIFF:** | STATE COURT |
| William G Esslinger, Jr. | |
| -versus- | County of Carroll, Georgia |
| **DEFENDANT:** | Court Case # **STCV2022000389** |
| Endlink LLC, Robert F White | |

**Service Info:**

**Received by Scott Rouskey: on August, 19th 2022 at 03:52 PM**
**Service:** I Served **Endlink, LLC**
With: **SUMMONS, AMENDED COMPLAINT, PLAINTIFFS FIRST INTERROGATORIES TO DEFENDANTS AND PLAINTIFFS FIRST REQUESTS FOR DOCUMENTS TO DEFENDANTS**
by leaving with **KEVIN PAGAN, son of registered agent**

**At Residence 2494 VERDMONT COURT, CAPE CORAL, FL 33991**
On **8/25/2022** at **11:41 PM**
**Manner of Service: CORPORATE R/A**
F.S. 48.091(1)(2) CORPORATIONS: DESIGNATION OF REGISTERED AGENT

**Served Description:  (Approx)**

Age: **23**, Sex: **Male**, Race: **Hispanic**, Height: **5' 9"**, Weight: **155**, Hair: **Black** Glasses:  **No**

I **Scott Rouskey** acknowledge that I am 18 years or older, authorized to serve process, in good standing in the jurisdiction wherein the process was served, and I have no interest in the above action. Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true.

*Scott Rouskey*

_____

**Scott Rouskey**
Lic # **158136**

**Ancillary Legal Corporation**
74 Goldrush Circle NE
Atlanta, GA 30328

Client # 2022007699
Job # FM30367




# STATE COURT OF CARROLL COUNTY
# STATE OF GEORGIA

CIVIL ACTION NUMBER  <u>STCV2022000389</u>

Esslinger, William G., Jr.

_____

**PLAINTIFF**

**VS.**

ENDLINK, LLC
White, Robert F.

_____

**DEFENDANTS**

**SUMMONS**

TO: ENDLINK, LLC

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Tiana Mykkeltvedt**
**Bondurant Mixson & Elmore LLP**
**3900 One Atlantic Center**
**1201 W Peachtree St**
**Atlanta, Georgia 30309**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 29th day of July, 2022.**

Clerk of State Court

Alan Lee, Clerk
Carroll County, Georgia